CASE 81.—PROCEEDINGS BY THE COMMONWEALTH OF
KENTUCKY AGAINST THE UNITED STATES FI-
DELITY & GUARANTY COMPANY FOR FAILURE
TO OBTAIN AN OCCUPATION LICENSE.—May 12,
1909.

## U. S. Fidelity & Guaranty Co. v. Commonwealth

Appeal from Fleming Circuit Court.

Jas. P. Harbeson, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Affirmed.

1. Licenses—Occupation—"Inquiring Into and Reporting on
Credit."—A corporation whose business is to guarantee, in-
dorse, secure payment of debts and obligations, insure fidelity
of persons and concerns holding positions of trust, and
through guaranteed attorneys furnish direct to subscribers
of a quarterly publication, and not through the company, the
commercial standing of merchants and other persons is en-
gaged in the business of inquiring into and reporting on the
credit and standing of persons engaged in business within
Ky. St. 1909, Sec. 4224, requiring persons or concerns so
engaged to secure a license.

2. Licenses—Occupation—Failure to Obtain License—Prosecu-
tion—Defenses.—In the prosecution of a corporation for en-
gaging in a specified business without an occupation license,
it is no defense that in engaging in such business defendant
exceeded its corporate powers.

J. H. POWER for appellant.

M. J. HENNESSEY for appellees.
(No briefs—record out of office.)

Opinion of the court by Judge Carroll.—Affirm-
ing.

One of the subsections of section 4224 of the Ken-
tucky Statutes of the 1909 edition provides that "each
and every person, partnership or corporation having
representatives in this State, who engage in the busi-

ness of inquiring into and reporting upon the credit
and standing of persons engaged in business in this
State, shall pay a license tax of one hundred dollars.
Any person having such license shall print in his let-
ter head a statement of the fact. The payment of the
tax shall be made direct to the Auditor, and his receipt
therefor shall exempt the company or party carrying
on said business from the payment of such tax in any
county, and payment of such tax shall not be required
of any subagent or correspondent of the party for
the company carrying on said business in this State;
and any such person acting as correspondent or sub-
agent of such agent or company, and who shall trans-
act any business, make report to such company,
whether within or without this State, without the
party or company having first paid the tax herein pro-
vided, shall be liable to all penalties for carrying on
the business without paying the tax." The appellant
was proceeded against by penal action for violating
mentioned, and upon a trial on an agreed state of facts
was found guilty and fined $100. Insisting that it was
this section by failing to procure the license therein
not engaged in the business described in the statute,
it asks that the judgment against it be reversed.

It appears from the agreed statement of facts that
the company is a Maryland corporation, with power
to guarantee, indorse, secure payment, and punctual
performance and collection of notes, debts, bills of ex-
change, contracts, bonds, accounts, and other evi-
dences of debt. It is further authorized to insure the
fidelity of any person, partnership, association, cor-
poration, or company holding any place or position of
trust or responsibility, or owing any duty, contractual
or otherwise, to any person or persons. It further

appears that the company issues a publication styled "Guaranteed Attorneys Quarterly," and that, in consideration of the fee paid to it by attorneys throughout the country, it inserts their names in these quarterlies, and guarantees merchants and other persons sending to these attorneys claims that they will promptly and faithfully pay over all money collected. It also furnishes to merchants and other persons for a consideration its list of guaranteed attorneys, and provides both the attorneys and the subscribers with blank forms upon which information respecting the financial standing of persons whom the subscribing merchants desire to deal with may be furnished by the attorneys. J. H. Powers and T. L. Gibbons, attorneys at law in Fleming county, were among the guaranteed attorneys of this company, and these attorneys from time to time, and when requested, answered such inquiries concerning the business and commercial standing of persons as subscribing members to the list of guaranteed attorneys desired. These attorneys did not make any reports directly to the guaranty company, but sent their reports direct to the firm or person desiring them.

The question, then, is: Was this company doing the business described in the section of the statute supra? It had as representatives in Fleming county Powers and Gibbons, and guaranteed to all of its subscribers that they would diligently and faithfully transact business committed to their care. As a part of the consideration for being thus listed and bonded by this company, these attorneys agreed that they would furnish reports of the financial credit and standing of persons to any subscribers for the book published by the company containing a list of its bonded attorneys. Under

this arrangement, the company received a fee from the attorneys whose integrity and ·fidelity it guaranteed, and also a fee from the merchants and others to whom it sold its book containing the names of these attorneys. It is true that these attorneys did not make reports of the financial standing of individuals directly to the company, but it did make such reports to all persons who were authorized by the company to request them. In our opinion the company within the meaning of the statute was engaged through its attorneys in the business of inquiring into and reporting upon the credit and standing of persons engaged in business in this State. The fact that the attorneys were not exclusively engaged in the business of furnishing information concerning the financial standing of merchants and others, or the fact that the company guaranteed their fidelity generally, did not alter the fact that they did as the agents and representatives of the company make these reports. We are not able to perceive any difference, so far as the result desired to be accomplished is concerned, between sending the report direct to the company to be furnished by it to the merchant and sending it immediately to the merchant. In each instance the company through its agents gathered the information and distributed it to the persons entitled to receive it. There are several concerns distinctly known as commercial agencies, such as Dun and Bradstreet, that are engaged exclusively in this business. These agencies obtain through their representatives or attorneys information as to the financial standing of persons and furnish this information to their subscribers; but in the end the only difference between their methods and those employed by the appellant company is in the means by which

the desired end is attained and the volume of business done. The contract entered into between the appellant company and its attorneys required them to furnish the information free to all subscribers for the book containing a list of the company's attorneys. It therefore seems plain that the attorney obtained and furnished this information as a representative or agent of the company. The subscriber writes the attorney because he is a bonded representative of the company, and the attorney gives the subscriber the information desired because his contract with the company obliges him to do so. So that, in every detail of the transaction, the attorney is acting as a representative of the company. The statute should be construed liberally to carry out its intent, and its purpose is clearly expressed in the sentence declaring that ''each and every person, partnership or corporation, having representatives in this State, who engage in the business of inquiring into and reporting upon the credit and standing of persons engaged in business in this State shall pay a license tax of one hundred dollars.'' We do not deem it necessary to inquire into the power of the company under its charter to do the character of business for which it was prosecuted. It assumed the right under its charter to engage in this business, and will not be heard to say, when prosecuted for failing to obtain the necessary license, that in doing so it exceeded its charter powers.

Wherefore the judgment of the lower court is affirmed.